FIFTH DIVISION

No. 1-07-0393

| | | |
|---|---|---|
| *In re* T.C., a Minor | ) | Appeal from the |
| (The People of the State of Illinois, | ) | Circuit Court of |
| | ) | Cook County. |
| Petitioner-Appellee, | ) | |
| v. | ) | No. 03 JD 3603 |
| | ) | |
| Traven C., | ) | Honorable |
| | ) | Rodney Hughes Brooks, |
| Respondent-Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Following a juvenile court proceeding, T.C., a minor, was adjudicated delinquent of aggravated criminal sexual assault and sentenced to five years of probation. As a result of being adjudicated delinquent of aggravated criminal sexual assault, T.C. was classified as a "sexual predator" pursuant to the Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq*. (West 2004)), thereby mandating him to register as a sex offender for the rest of his natural life. On appeal, T.C. argues that the State failed to prove him delinquent beyond a reasonable doubt and that he should have been afforded the right to a jury trial as a safeguard against the burdensome requirements of SORA.

At the juvenile proceeding, the victim, P.W., testified that on May 25, 2003, when he was in second grade, he was at his great-grandmother's house. T.C., his cousin, was also there. P.W. testified that he was lying on a bed in the basement when T.C. came downstairs and got in bed behind P.W., pulled down the back of his pants, and put his penis near P.W.'s anus. When asked by the State if he felt it "touching" when T.C. put his penis to P.W.'s anus, P.W. responded, "Yes." When asked if he knew what his anus was for, P.W. responded, "Poop." P.W. testified

that he told T.C. to stop in a loud voice, at which point T.C. told P.W. he would "beat his ass." P.W. averred that he believed T.C. would beat him up and that he was afraid. The incident lasted about one minute. P.W. testified further that a few days later he told his mother about the incident when his "behind start[ed] itching," and that he did not immediately tell anyone because he was scared.

Christina Frenzel, an assistant State's Attorney, testified that on July 24, 2003, she met with T.C. and his mother. At that time, T.C. gave a handwritten statement, which was published to the court.

In his statement, T.C. indicated that he was 14 years old and that P.W. was his cousin. He knew P.W. was "probably" in second grade. T.C. stated that on the date in question, he and P.W. were in the basement playing, and he bit P.W.'s butt. T.C. stated that they were "playing gay" and both P.W. and T.C. pulled their pants down to their ankles. He stated that they were lying on the bed, that his penis was hard, and that his "penis touched [P.W.] on the butt near the top center area."

At the close of evidence, the trial court found T.C. guilty of aggravated criminal sexual assault pursuant to section 12-14(b) of the Criminal Code of 1961 (Criminal Code). 720 ILCS 5/12-14(b) (West 2004). At the sentencing hearing, the trial court determined that it was in the best interest of T.C. that he be made a ward of the court. As such, he was placed on five years' probation, and required to perform 60 hours of community service. T.C. now appeals.

T.C.'s first argument on appeal is that the State failed to prove him guilty beyond a reasonable doubt. When a court considers a challenge to a finding of delinquency based on the

sufficiency of the evidence the standard of review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Sutherland, 223 Ill. 2d 187, 242 (2006).

T.C. was adjudicated delinquent pursuant to section 12-14(b)(i) of the Criminal Code, which states that an individual commits aggravated criminal sexual assault if the accused was under 17 years of age and commits an act of sexual penetration with a victim who was under 9 years of age when the act was committed. 720 ILCS 5/12-14(b)(i) (West 2004). T.C. concedes that he was under 17 on the date of the incident, and that P.W. was under 9 years of age. He argues, however, that the State failed to prove that T.C. committed an act of sexual penetration beyond a reasonable doubt.

Sexual penetration is defined as "any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth, or anus of another person." 720 ILCS 5/12-12(f) (West 2004). See also People v. Gardner, 172 Ill. App. 3d 763, 766 (1988) (finding that defendant's attempt to penetrate victim's vagina, although unsuccessful, was an act of penetration for purposes of an aggravated sexual criminal assault conviction, as sexual penetration is defined as "any contact, however slight, between the sex organ of one person and the sex organ of another person"); see also People v. Velasco, 216 Ill. App. 3d 578, 589 (1991) (finding that because "criminal sexual assault does not require physical penetration," the fact that defendant touched the victim's genitals with his mouth was sufficient to satisfy the element of penetration). The evidence presented at trial was that P.W. testified that T.C. put his penis by

P.W.'s anus, and when asked if he felt it "touching" when respondent put his penis to P.W.'s anus, P.W. responded, "Yes." Additionally, respondent, in his handwritten statement, stated that his penis was hard and that his penis "touched [P.W.] on the butt near the top center area." When asked what his anus was used for, P.W. responded, "Poop." Viewed in the light most favorable to the prosecution, we find that any rational trier of fact could have found, based on this evidence, that respondent's penis touched P.W.'s anus, thus satisfying the element of penetration beyond a reasonable doubt.

T.C.'s next argument on appeal is that section 5-101(3) of the Juvenile Court Act of 1987 (Juvenile Court Act), which denies minors the right to a jury trial except in certain circumstances, is an unconstitutional violation of due process as applied to him. 705 ILCS 405/5-101(3) (West 2004). Specifically, T.C. contends that the consequences of being found delinquent of aggravated criminal sexual assault are so burdensome that they deprive him of a liberty interest and that as such, the right to a jury trial should be required as a procedural safeguard to prevent such deprivation of a liberty interest. We disagree.

Our statutes are presumed to be constitutional and the burden of establishing a statute's invalidity falls on the party challenging it. People v. Stanley, 369 Ill. App. 3d 441, 448 (2006). The constitutionality of a statute is reviewed *de novo*. Stanley, 369 Ill. App.3d at 448.

Procedural due process "requires that a person in danger of serious loss of life, liberty or property be given notice of the case against him and opportunity to meet it." Stanley, 369 Ill. App. 3d at 448. "Challenges based on procedural due process focus on the procedures employed by a statute and whether the statute provides an opportunity to be heard at a meaningful time and

in a meaningful manner." Stanley, 369 Ill. App. 3d at 448. "The first step in a procedural due process challenge is to determine whether an individual has been deprived of life or a protected liberty or property interest." Stanley, 369 Ill. App. 3d at 448. "The second step is to determine what process is 'due' before such a deprivation may occur." Stanley, 369 Ill. App. 3d at 448.

We therefore address the first step in T.C.'s due process challenge, which is whether T.C. has been deprived of a protected liberty interest by the requirements imposed pursuant to the Sex Offender Registration Act (SORA). Because T.C. was adjudicated delinquent of aggravated criminal sexual assault, he is now classified as a "sexual predator" pursuant to SORA. See 730 ILCS 150/2(E)(1) (West 2004) (a "sexual predator" is any person convicted or adjudicated delinquent of aggravated criminal sexual assault after July 1, 1999). SORA further provides that all sexual predators must register as sex offenders for natural life. See 730 ILCS 150/7 (West 2004). Registration is defined as signing a written statement annually, in person, attesting that such person is a sex offender. Such written statement must be accompanied by a picture and may be accompanied by fingerprints. If a sex offender changes his address, school, or place of employment, he has a duty to report such changes. See 730 ILCS 150/6 through 8 (West 2004). Accordingly, because T.C. was adjudicated delinquent of aggravated criminal sexual assault and is therefore a "sexual predator" under SORA, he must register annually as a sex offender for the rest of his natural life and report any address, school, or place of employment changes. T.C. argues that these requirements are so burdensome that they deprive him of a protected liberty interest. We disagree.

A liberty interest means "not only the right of a citizen to be free from the mere physical

restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation; and for that purpose to enter into all contracts which may be proper, necessary, and essential to his carrying out to a successful conclusion the purposes above mentioned." Allgeyer v. Louisiana, 165 U.S. 578, 589, 41 L. Ed. 832, 835, 17 S. Ct. 427, 431 (1897). We do not believe that defendant has met his burden of showing that the registration requirements imposed under SORA deprive him of a protected liberty interest. T.C. has failed to show, beyond merely stating that being required to register as a sex offender for the rest of his natural life places substantial limitations on his liberty by periodically having to report his address, school, and place of employment to authorities (see 730 ILCS 150/6 (West 2004)), how such registration requirements deprived him of his right to be free from physical restraints, to be free in the enjoyment of his faculties, and to live and work where he will. See People v. Logan, 302 Ill. App. 3d 319, 332 (1998) (where defendant failed to identify how the registration requirements impaired his ability to travel, defendant failed to show that the registration law deprived him of a protected liberty or property interest).

Moreover, several Illinois cases have affirmatively found that the registration requirements of SORA do not affect a protected liberty or property interest. *Cf.* People v. Stork, 305 Ill. App. 3d 714 (1999) (finding requirements under SORA did not implicate any protected liberty interests); Stanley, 369 Ill. App. 3d at 449-50 (finding lifetime registration did not affect a property interest), citing Connecticut Department of Public Safety v. Doe, 538 U.S. 1, 155 L. Ed.

2d 98, 123 S. Ct. 1160 (2003); In re J.W., 204 Ill. 2d 50, 67 (2003) (finding that the registration requirements of SORA do not affect a fundamental right). Therefore, because T.C. has failed to show how the requirements of SORA deprive him of a protected liberty interest, T.C.'s argument that he was entitled to the right to a jury trial as a procedural safeguard against such deprivation must fail.

However, even if we were to find that T.C. identified a valid deprivation of a protected liberty interest, we would nevertheless find that he received all the process he was due and thus was not entitled to the right to a jury trial. It is well-settled law that "in a juvenile proceeding, due process does not require a jury." In re Matthew M., 335 Ill. App. 3d 276, 288 (2002); see McKeiver v. Pennsylvania, 403 U.S. 528, 29 L. Ed. 2d 647, 91 S. Ct. 1976 (1971); see also People v. Beltran, 327 Ill. App. 3d 685 (2002). This is because a juvenile proceeding is not 'a "criminal prosecution," within the meaning and reach of the Sixth Amendment.' People v. Taylor, 221 Ill. 2d 157, 168 (2006), quoting McKeiver, 403 U.S. at 541, 29 L.Ed. 2d at 658, 91 S. Ct at 1984. However, juvenile offenders have a right to a jury trial in a limited number of situations under the Juvenile Court Act (see In re G.O., 191 Ill.2d 37, 42 (2000) (the Act grants a jury trial to habitual and violent juvenile offenders, but it does not grant such a right to juveniles charged with first degree murder)). T.C. argues that because his punishment scheme is comparable to that of a habitual or violent juvenile offender's punishment scheme, the right to a jury trial should be extended to him.

While it is true that the Juvenile Court Act extends the right to a jury trial to juvenile offenders in three situations, we are unpersuaded by T.C.'s attempt to compare his case to such

7

exceptions. Juvenile offenders are afforded the right to a jury trial when: (1) the juvenile court designates the case as an extended jurisdiction juvenile (EJJ) prosecution, which means if the proceeding results in a guilty verdict, the trial court must impose a juvenile sentence and an adult sentence, staying the adult sentence on the condition that the minor not violate the provisions of the juvenile sentence (705 ILCS 405/5-810(3),(4)(ii) (West 2004)), (2) the juvenile is a habitual juvenile offender convicted of offenses that, had he been tried as an adult, would have been felonies, thereby mandating him to the department of corrections without possibility of parole until his twenty-first birthday (705 ILCS 405/5-815(d),(f) (West 2004)), and (3) a juvenile who commits an offense that, had he been tried as an adult, would have been a Class 2 felony, while using the threat or force of physical violence, thereby mandating him to the department of corrections without possibility of parole until his twenty-first birthday (705 ILCS 405/5-820(d),(f) (West 2004)). T.C. argues that a juvenile sex offender, like himself, who faces the possibility of being adjudicated delinquent for aggravated criminal sexual assault, and thus labeled as a sexual predator and required to register under SORA for the rest of his natural life, should be entitled to a jury trial just as EJJ, habitual and violent juvenile offenders are so entitled. We disagree.

In each of the exceptions listed in the Juvenile Court Act, the juvenile offender faces severe punishment if adjudicated delinquent, *i.e.* mandatory incarceration or the possibility of an adult sentence. The policy reasons behind affording habitual and violent juvenile offenders a right to a jury trial is that if they are faced with an adult sentence, they should be afforded the same due process that an adult would have if faced with such sentence, namely the right to a jury

8

trial.  M. Spring, <u>Extended Jurisdiction Juvenile Prosecution: A New Approach to the Problem of Juvenile Delinquency in Illinois</u>, 31 J. Marshall L. Rev. 1351, 1361 (1998).  In the case at bar, T.C. maintains that as a result of his adjudication of delinquency, he must register as a sex offender for life, which is an adult punishment, and therefore he should be afforded the same due process an adult would get if faced with the requirements of registering under SORA.  However, we note that T.C. was adjudicated delinquent of aggravated criminal sexual assault, which would be a Class X felony if he were tried as an adult.   A Class X felony is punishable by not less than 6 years and not more than 30 years imprisonment.  See 730 ILCS 5/5-8-1(a)(3) (West 2004).  However, because of his minor status, T.C. only faced, and was only sentenced to, 5 years' probation and 60 hours of community service.  As such, because he was being sentenced as a juvenile, and not an adult, he was afforded the process he was due as a juvenile.  See <u>McKeiver</u>, 403 U.S. at 541, 29 L. Ed. 2d at 658, 91 S. Ct at 1984 (due process does not require a jury trial in a juvenile proceeding).  The registration requirements of SORA were therefore a collateral consequence to his adjudication, and not part of his punishment for his offense. See <u>In re J.W.</u>, 204 Ill. 2d 50, 73 (2003) (finding that the registration requirements under SORA "are not punitive" and finding no merit to juvenile offender's claim that lifetime registration requirement was analogous to the imposition of the death penalty as cruel and unusual punishment); see also <u>In re Ayres</u>, 239 Mich. App. 8, 608 N. W. 2d 132 (1999) (registration act as applied to juveniles is not a punishment); see also <u>People ex rel. Symonds v. Gualano</u>, 124 Ill. App. 2d 208, 215 (1970) (a collateral consequence is based on action taken by an agency that the trial court does not control).

Moreover, while it is true that the purpose of the Juvenile Court Act is the rehabilitation of the minor (705 ILCS 405/5-101(1)(c) (West 2004)), the purpose and policy section of the Juvenile Court Act has been recently amended to promote a juvenile justice system capable of dealing with the problem of juvenile delinquency, a system that will protect the community, impose accountability for violations of law, and equip juvenile offenders with competencies to live responsibly and productively (705 ILCS 405/5-101 (West 2004)). Important purposes of the Juvenile Court Act are now to "protect citizens from juvenile crime," and to "hold each juvenile offender directly accountable for his or her acts." 705 ILCS 405/5-101(a),(b) (West 2004). Our supreme court has recognized that these amendments "represent a *** shift from the singular goal of rehabilitation to include the overriding concerns of protecting the public and of holding juveniles accountable for violations of the law." J.W., 204 Ill. 2d at 69. Given such concerns, coupled with the "serious problems presented by juvenile sex offenders," our supreme court has found that requiring a juvenile sex offender to register as a sex offender for life is not at odds with the purpose and policy of the Juvenile Court Act. J.W., 204 Ill. 2d at 70. As such, our supreme court has affirmatively found that SORA is appropriately applicable to juveniles as well as adults because the policy interests behind SORA are to protect the public, which is not at odds with the recently amended policy concerns of the Juvenile Court Act. The requirements imposed under SORA are not a part of T.C.'s sentence, as they are a collateral consequence and do not constitute a punishment, and we are therefore unpersuaded by T.C.'s attempt to compare such requirements to the sentences that habitual and violent juvenile offenders face in arguing that he should have been afforded the right to a jury trial.

Because T.C. was not deprived of a liberty interest by the requirements of SORA, and in any event he was afforded all the process he was due as a juvenile offender, we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

GALLAGHER and O'MARA FROSSARD, JJ., concur.

No. 1-070393

_____

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**
**(Front Sheet to be Attached to Each Case)**
_____

Please use the following form

*In re* T.C., a Minor
(The People of the State of Illinois,

                    Petitioner-Appellee,

v.

Traven C.,

                    Respondent-Appellant).

_____

Docket No.

 COURT
Opinion
 Filed

                              Nos. <u>1-07-0393</u>

                           Appellate Court of Illinois
                           First District, <u>FIFTH</u> Division

                             <u>August 22, 2008</u>
                           (Give month, day and year)
_____

PRESIDING JUSTICE JAMES FITZGERALD SMITH DELIVERED THE OPINION OF THE COURT:

JUSTICES_____              <u>GALLAGHER</u> and <u>O'MARA FROSSARD, JJ.,</u>    concur.

_____

                    Lower Court and Trial Judge(s) in form indicated in margin:

APPEAL from the
Circuit Court of Cook                    Appeal from the Circuit Court of Cook County.
County; the Hon_____
Judge Presiding.              The Hon. <u>RODNEY HUGHES BROOKS</u> Judge presiding.
_____

Indicate if attorney represents APPELLANTS or APPELLEES and include attorney's of counsel.
Indicate the word FOR APPELLANTS NONE if not represented.
John Doe, of Chicago

                    APPELLANT: OFFICE OF THE STATE APPELLATE DEFENDER, Chicago, IL Michael J.
                    Pelletier; Brian A McNeil.
_____


For APPELLEES,    <u>APPELLEE:</u> STATE'S ATTORNEY, Chicago, IL James E. Fitzegerald; Mary Boland;
                    Samuel Shim; Colleen Keough.
_____

12